IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Elizabeth Anne Soland, | C/A No. 0:13-3106-TLW-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Elizabeth Anne Soland, brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 416.920(h).



**ADMINISTRATIVE PROCEEDINGS**

In January 2010, Soland applied for SSI, alleging disability beginning January 26, 2010. Soland's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 24, 2012 at which Soland, who was represented by Mario A. Pacella, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on September 13, 2012 denying benefits and concluding that Soland was not disabled. (Tr. 12-22.)

Soland was born in 1970 and was forty years old at the time her application was filed. (Tr. 121.) She has a high school education and past relevant work experience as a caregiver, a cleaner at a restaurant, a day laborer at a handbell warehouse, and a secretary at a school. (Tr. 153-54.) Soland alleged disability due to hydrocephalus, scoliosis, night blindness, heart murmur, low temperature intolerance, altitude limits, and hearing problems. (Tr. 152.)

In applying the five-step sequential process, the ALJ found that Soland had not engaged in substantial gainful activity since January 26, 2010—her alleged onset date. The ALJ also determined that Soland's congenital hydrocephalus; scoliosis; attention deficit disorder; anxiety disorder, not otherwise specified, with obsessive compulsive disorder features; and cognitive disorder were severe impairments. However, the ALJ found that Soland did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Soland retained the residual functional capacity to

> perform light work as defined in 20 CFR 416.967(b), with restrictions that require simple routine tasks; a supervised environment (a working-supervisor present in the general work area to answer questions); no required interaction with the public or



team-type interaction with coworkers; no more than occasional stooping, twisting, kneeling, crouching, crawling, or climbing of stairs or ramps; no climbing of ladders or scaffolds; avoidance of unprotected heights and machinery with exposed, hazardous moving parts; and an environment reasonably free from the extremes of temperature and humidity.

(Tr. 17.) The ALJ found that Soland was unable to perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that Soland could perform. Therefore, the ALJ found that Soland had not been under a disability since January 26, 2010—the date the application was filed.

Soland appealed the ALJ's decision to the Appeals Council, which denied her request for review on September 20, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-6.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.



Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  <u>Blalock</u>, 483 F.2d at 775.

## ISSUES

Soland raises the following issues for this judicial review:

- A. ALJ Pope failed to evaluate the testimony of Plaintiff's mother regarding the need for accommodations in the workplace.

- B. ALJ Pope erred in finding the Third Party Function Report to be biased and inconsistent with the medical opinions.

- C. ALJ Pope erred in failing to credit Dr. Gore's opinion regarding Plaintiff's limitations even though he gave the report of Dr. Gore substantial weight.

(Pl.'s Br., ECF No. 18.)

## DISCUSSION

**A.     Lay Evidence**

In addition to evidence from acceptable medical sources, the ALJ "may" use evidence from other non-medical sources, such as evidence from spouses, parents, and friends, to show the severity of a claimant's impairment(s) and how it affects his or her ability to work.  20 C.F.R. § 416.913(d)(4); SSR 06-03p, 2006 WL 2329939, at *2.  "[I]nformation from [non-medical sources] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function[;]" however, in considering evidence from these sources, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."  SSR 06-03p, 2006 WL 2329939, at *2, *6.



In this case, Soland argues that the ALJ erred in failing to evaluate her mother's testimony regarding Soland's work limitations at her previous employer, Jeffer's Handbell (where Soland's mother was also employed), and their impact on her residual functional capacity. Specifically, Soland argues that her mother "testified that she assisted Plaintiff in securing employment at Jeffer's Handbell where Plaintiff was to package compact discs and catalogs in boxes for shipment. Although [her mother] was not Plaintiff's supervisor, she regularly checked on Plaintiff and noted that Plaintiff's pace was slower than others, and that if Plaintiff's pace did not meet her needs, others would help and accomplish twice as much production as Plaintiff." (Pl.'s Br. at 3, ECF No. 17 at 3) (citing Tr. 46-47). However, as pointed out by the Commissioner when Soland's mother was asked about Soland's pace at performing the job at Jeffer's Handbell, she responded: "Okay. Well, as it turned out, she did fine as far as our needs were, but she was slower than others. Every once in a while someone would go out and also do this, because we did need it to be finished as a job, and so others would sit with her and they would always do close to twice as many as she would accomplish in the same time." (Tr. 47.)

As an initial matter, the ALJ clearly considered testimony from Soland's mother regarding Soland's pace. For example, the ALJ stated that Soland's mother testified that Soland could perform activities of daily living—including the ability to care for her personal hygiene, cook, do laundry, clean, do yard work, shop, pay bills, cross-stitch, read, watch television, and drive—"but that it takes her longer, which is accounted for in the residual functional capacity." (Tr. 19.) The ALJ found that Soland's residual functional capacity included "restrictions that require simple routine tasks [and] a supervised environment (a working-supervisor present in the general work area to answer questions)." (Tr. 17; see also Tr. 16 (finding that Soland had moderate limitations in concentration,

persistence, or pace and discussing evidence supporting this finding)). Moreover, the court finds that it is unclear how additional discussion of the specific testimony at issue by the ALJ would warrant additional restrictions that those provided. See, e.g., Oliver v. Colvin, No. 2:12-CV-480, 2014 WL 710101, at * 5 (E.D. Tenn. Feb. 21, 2014) ("The fact that an individual may not function at the same pace as others is a limitation, but if the person still performs 'satisfactorily,' that does not denote disabled status."); see also Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ need not specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection rendering the court unable to conclude that the ALJ considered the claimant's medical condition as a whole); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Soland also argues that the ALJ's evaluation of the Third Party Function Report completed by Soland's mother is unsupported by substantial evidence and appears to argue that the ALJ incorrectly applied the law. Upon review of the ALJ's decision and the record as a whole, the court finds that remand is not warranted on this ground. In discussing this report, the ALJ stated as follows:

> The record additionally contains a report from Ms. Soland, which is generally supportive of the claimant's allegations. The report of Ms. Soland does not establish that the claimant is disabled. Since Ms. Soland is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided is questionable. Moreover, by virtue of the relationship with the claimant, Ms. Soland cannot be considered a disinterested third party witness whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the third



> party report because it, like the claimant's allegations, is simply not consistent with
> the preponderance of the opinions and observations by medical doctors in this case.

(Tr. 20) (citing Tr. 192-99).

Soland challenges the first two reasons offered by the ALJ in determining that this report was not entitled to significant weight—that her mother was not medically trained and that she was biased. Importantly, contrary to Soland's argument, the court finds that these two reasons do not appear to be "a strong component" of the ALJ's rationale; rather, as stated by the ALJ, the most important reason was that the report, like Soland's subjective complaints, was "not consistent with the preponderance of the opinions and observations by medical doctors in this case." (Tr. 20.) Moreover, Soland has failed to demonstrate that in weighing evidence from non-medical sources, these are not appropriate factors to consider in conjunction with other factors. The court disagrees that by including these factors it renders § 416.912(b)(3) meaningless. See 20 C.F.R. § 416.912(b)(3) (including in the definition of "evidence," "[s]tatements you or others make about your impairment(s), your restrictions, your daily activities, your efforts to work, or any other relevant statements you make to medical sources during the course of examination or treatment, or to us during interviews, on applications, in letters, and in testimony in our administrative proceedings). As discussed above, the ALJ may use evidence from non-medical sources, and in considering it, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6.

Soland also argues that her mother's notations are not inconsistent with statements from Dr. Boyd and Dr. Gore. Specifically, Soland asserts that these providers indicated that "Soland can



decompensate in stressful situations and in places outside of her comfort zone." (Pl.'s Br. at 9, ECF No. 17 at 9.)  Soland appears to argue that these statements are consistent with her mother's responses in the report, reasoning that her mother provides a picture of what happens when Soland is exposed to an unfamiliar environment or even low stress and describes Soland's inability to maintain pace with household activities like cooking and household chores.  (Id.)

Contrary to Soland's representations, the opinions of Drs. Boyd and Gore following consultative examinations do not include opinions that Soland can decompensate in stressful situations and in places outside of her comfort zone.  Rather, Dr. Gore's opinion reflects that Soland's mental impairments "have coalesced to produce marked social impairment [in] the capacity to manage even limited stress" and "that this level of social deficit would require a degree of supervisory support that would be inordinate."[3]  (Tr. 245.)  Further, Dr. Boyd's opinion reflects that "interactions outside of [Soland's] structured zone of comfort may create emotional consequences for this claimant."  (Tr. 301.)  Moreover, as discussed above, the ALJ limited Soland to "simple routine tasks [and] a supervised environment (a working-supervisor present in the general work area to answer questions)."  (Tr. 17.)  Further, the ALJ clearly considered the testimony of Soland's mother indicating that tasks, including her activities of daily living, take Soland longer, and specifically stated that he accounted for that in his residual functional capacity analysis.  (Tr. 19.)  Moreover, even if the court were to accept Soland's position that the ALJ erred in evaluating the report completed by her mother, the court finds that Soland cannot demonstrate that this error was harmful.

---

[3] Soland also argues that the ALJ erred in failing to address these specific conclusions by Dr. Gore, which is addressed below.  See infra, Section B.



B.  Dr. William E. Gore

On June 16, 2010, Dr. Gore completed a psychological evaluation of Soland, and Soland challenges the ALJ's treatment of a portion of Dr. Gore's opinion following this evaluation. Specifically, she argues that although the ALJ stated he gave Dr. Gore's opinion substantial weight, he failed to address Dr. Gore's conclusion that Soland's social deficit produced a marked impairment to manage even limited stress and would require inordinate supervisory support. Soland also argues that this conclusion is further supported by an opinion from Dr. Stephanie B. Boyd, another consultative examiner.

> The portion of Dr. Gore's opinion pertinent to this argument states as follows:
>
> The claimant is capable of understanding, recalling, and completing simple instructions. Her history and significant difficulty with abstraction in testing today suggest the possibility of higher order cognitive deficits that are not fully evident in this testing. Concentration, persistence, and pace do not appear to be markedly impaired, instead reflecting moderate limitations. The overall picture suggests that the combination of her cognitive deficits associated with hydrocephalus, the level of dependency which developed out [of] the degree of support she required over the years, and the impact of anxiety, have coalesced to produce marked social impairment [in] the capacity to manage even limited stress. I believe that this level of social deficit would require a degree of supervisory support that would be inordinate. She is capable of managing funds.

(Tr. 245.) Dr. Boyd subsequently evaluated Soland on March 8, 2011, and her opinion includes the following relevant summary and recommendations:

> The information and findings from this evaluation indicated that [Soland] experiences symptoms of ADHD and anxiety that appears to be fairly controlled by medication and a very controlled environment. Ms. Soland did not exhibit significant cognitive interference with her attention and concentration span. It is anticipated that she has the ability to manage at least simple, repetitive tasks related to her concentration, attention and intellectual level as long as her anxiety and ADHD symptoms are well managed. She demonstrated ability to maintain most of her ADLs, without difficulty. While Ms. Soland was able to interact appropriately with

>this examiner, however, I concur with Dr. Gore that interactions outside of her structured zone of comfort may create emotional consequences for this claimant.

(Tr. 301.)

In evaluating these opinions, the ALJ stated that "Dr. Boyd opined that the claimant could perform at least simple tasks, but may have trouble with interactions outside of her structured comfort zone (Ex. 14F). Dr. Gore also opined that the claimant could perform simple tasks, but could have anxiety in social situations or around stress (Ex. 4F)." (Tr. 20.) The ALJ gave those opinions substantial weight, observing that both doctors examined Soland and that their conclusions are supported by their findings within the reports. The ALJ further noted "that the supervised environment with limited interaction would be sufficient, based on the claimant's testimony, to alleviate many of the stresses that could exacerbate the claimant's condition." (Id.)

Although the ALJ may not have quoted or specifically detailed every aspect of these opinions, the court finds that the ALJ's opinion reflects that he sufficiently considered and addressed them. Further, the ALJ did in fact address the doctor's opinions with regard to stress and social interaction, and found that restrictions including "simple routine tasks; a supervised environment (a working-supervisor present in the general work area to answer questions); no required interaction with the public or team-type interaction with coworkers" accommodated these opinions. To the extent that Soland's argument is interpreted as challenging this finding, the court finds that the ALJ's decision is comfortably within the bounds of substantial evidence. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh

PJG

conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Soland has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 7, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).